[No. 1826]

FRANK GOLDEN, PETITIONER, *v.* THE FIFTH ·JUDICIAL DISTRICT COURT OF THE STATE OF NEVADA, NYE COUNTY, MARK R. AVERILL, JUDGE, ET AL., RESPONDENTS.

1. BANKS AND BANKING—DISSOLUTION—APPOINTMENT OF RECEIVER—PROCEEDINGS—NOTICE.
    Under Stats. 1903, p. 155, c. 88, sec. 94, providing that, whenever the assets of a corporation are in danger of waste from litigation, any holder or holders of one-tenth of the capital stock may apply to the district court for an order dissolving the corporation and appointing a receiver, and Comp. Laws, 3212, providing that an injunction suspending the business of a corporation shall not be granted without due notice of the application, in a proceeding by stockholders to appoint a receiver for a bank and to enjoin its further operation, the directors of the bank must be made parties to the proceeding, and notice commanding an appearance forthwith to show cause why a receiver should not be appointed is not a sufficient notice, and all orders made in such a proceeding without making the directors parties are void.

2. APPEARANCE—EFFECT OF APPEARANCE WITHOUT SERVICE OF PROCESS.
    A proper appearance will give a court jurisdiction over a party to an action independent of the service of process.

3. PROHIBITION—PROCEEDINGS OF COURTS—APPOINTMENT OF RECEIVER FOR BANK.
    Where a court, in appointing a receiver of a bank, had no jurisdiction of the proceeding because necessary parties had not been served with notice, prohibition is the proper remedy to restrain the court and the receivers appointed from proceeding under the order appointing the receiver and all orders subsequent thereto and based thereon.

ORIGINAL PROCEEDING. Application by Frank Golden for a writ of prohibition against Mark R. Averill, as District Judge, and others. **Writ issued.**

The facts sufficiently appear in the opinion.

*James T. Boyd* and *A. N. Salisbury*, for Petitioner.

*Bartlett, Thatcher & Gibbons*, for Respondents:

I.   Prohibition does not lie when remedies can be had by appeal on writ of error.. (High on Extraordinary Legal Rem-

edies, 765; *People* v. *Westbrook*, 89 N. Y. 152; *State* v. *Corey*, 35 Minn. 178; *State* v. *District Judge*, 38 La. Ann. 921.) The order and decree of the District Court of the Fifth Judicial District of the State of Nevada, in and for the County of Nye, complained of by petitioner herein, is an injunction, and is therefore appealable. (Comp. Laws, 3425; *Turner* v. *Langan*, 29 Nev. 281; *Bell* v. *District Court*, 28 Nev. 280; *Wolcott* v. *Wells*, 21 Nev. 51.) Petitioner must show affirmatively that the court is about to proceed in a matter where it has no jurisdiction. (*Haldeman* v. *Davis*, 28 W. Va. 324.) Want of jurisdiction must affirmatively appear on the record. (High on Extraordinary Legal Remedies, 766; *In Re Cooper*, 143 U. S. 472.)

II. The nature of an action determines the jurisdiction of the subject-matter regardless of sufficiency or its presentation or statement, and if the action is of such nature as to fall within the jurisdiction of the district court, prohibition will not lie merely because of insufficiency in statement of case in pleadings, or because of insufficient proof to maintain the execution as stated. (High on Extraordinary Legal Remedies, 767; *State* v. *Fournet*, 45 La. Ann. 943; *Bishop* v. *McKinley*, 84 Pac. 435.) The superior court on hearing for the writ of prohibition will not constitute itself an appellate court to review errors or irregularities which may have occurred at the trial. (*McCohiaha* v. *Guthrie*, 21 W. Va. 134; *Ex Parte Ellison*, 20 Grat. 10; High on Legal Remedies, 767, 770, 772; *State* v. *Road Commissioners*, 12 Am. Dec. 608.)

By the Court, NORCROSS, C. J.:

This is an original proceeding in prohibition. The petitioner, Frank Golden, is the president of the Nye and Ormsby County Bank, a corporation. Respondent Mark R. Averill is Judge of the Fifth Judicial District Court of the State of Nevada, in and for the County of Nye. Respondents J. J. Mullin and Gilbert C. Ross are receivers of the said Nye and Ormsby County Bank, appointed by said respondent Averill, judge as aforesaid, on the 24th day of February, 1909. Petitioner prays for a writ to prohibit respondents from proceeding further under said order of February 24th appointing said

receivers, and from proceeding under an order made on the 9th day of March, 1909, by the said respondent Mark Averill, judge as aforesaid, requiring petitioner herein to appear and show cause why he should not be punished for contempt for refusing to deliver to said receivers, upon demand being made upon him therefor, the assets and property of said corporation in his possession, including the books, papers, and records of said corporation; and also from further proceeding under any order made subsequent to and in pursuance of said order of February 24th.

The following are all the facts shown upon the hearing of this cause which we deem necessary for a consideration of the legal questions presented:

On the 24th day of February, 1909, a petition was filed in the lower court praying for the appointment of a receiver and for the ultimate dissolution of the Nye and Ormsby County Bank, a corporation, pursuant to the provisions of section 94 of an act entitled "An act providing a general corporation law." (Stats. 1903, p. 155, c. 88.)

The petition is entitled as follows: "In the Fifth Judicial District Court of the State of Nevada, in and for Nye County. In the matter of the application for the dissolution of the Nye and Ormsby County Bank, a corporation, and the appointment of a receiver thereof to wind up its affairs."

The petition alleges: That the Nye and Ormsby County Bank is a corporation duly incorporated under the laws of the State of Nevada, with principal place of business at Tonopah in the said County of Nye, engaged in a general banking business at said town of Tonopah and maintaining a number of branch banks in other towns and cities in this state. That it has a capital stock of $500,000, divided into 5,000 shares of the par value of $100 each, of which amount of stock 3,972 shares have been issued. That of the petitioning stockholders Frank Golden is the owner of 700 shares and James J. McQuillan, T. W. Kendall, and W. J. Douglass the owners of 100 shares each. That the assets of the said corporation are of the value of $1,600,000. That the amounts due depositors do not amount to the sum of $400,000, and the other liabilities of said corporation do not exceed the sum of $200,000.

That the amount due the stockholders is the par value of the issued stock, $397,200. That said corporation is solvent, but, owing to the prevailing financial stringency in the State of Nevada and the United States, is unable to procure and has not the actual coin needed to pay all of its obligations in full. That on the 23d day of February, 1909, the said corporation ceased to do any banking business and to receive or pay out deposits. That by reason of the foregoing facts the assets of said corporation are in danger of waste through attachment and litigation. That if a receiver is appointed to wind up the affairs of the corporation, the assets of said corporation will be sufficient to pay all the depositors, creditors, and stockholders; otherwise, the assets will be sacrificed and sold below their real value, and a serious loss and injury sustained. That none of the directors of said corporation have been guilty of any negligence nor active breach of duty. "Wherefore petitioners pray that an order to show cause issue forthwith why a receiver should not be appointed herein  *  *  * with full power and authority to wind up the affairs of said corporation and to liquidate all its business, and that an injunction issue herein prohibiting and restraining said corporation  *  *  * from exercising any of its powers and doing any business whatsoever, and at the due and proper time and on sufficient cause shown to this court, it make its decree dissolving said corporation and terminating its existence. Frank Golden, by Jas. J. McQuillan. Jas. J. McQuillan. W. J. Douglass. T. W. Kendall."

Upon the same day and immediately following the filing of the said petition, the court issued an order or citation including an injunction, which, after reciting the fact of the filing of the said petition and that good cause appeared therefrom for the appointment of a receiver for the purposes aforesaid, commanded: "Now, therefore, it is hereby commanded that you, the Nye and Ormsby County Bank, a corporation, appear and show cause forthwith before the above honorable court at the court-house in Tonopah, Nye County, Nevada, why this court should not make and enter its decree appointing a receiver with all the power and authority authorized and conferred by the laws of the State of Nevada for the purpose of

winding up, the affairs of the Nye and Ormsby County Bank, a corporation, and for a decree at the due and proper time and upon sufficient showing dissolving said corporation and terminating its existence. And it is further ordered and commanded that, until the further order of this court, you, the said Nye and Ormsby County Bank, a corporation, your officers, agents, employees, and servants, desist and refrain from exercising any of the corporate powers of said the Nye and Ormsby County Bank, a corporation, or doing any business whatsoever. It is further ordered that this order to show cause and injunction be served upon the secretary of the said the Nye and Ormsby County Bank, a corporation. Done in open court this 24th day of February, 1909. Mark R. Averill, Judge of said District Court."

This order or citation was returned by the sheriff as having been served on the secretary of said banking corporation on the day of its issuance. At 5 o'clock p. m. of the same day, the matter came on to be heard before the court. Findings of fact and conclusions of law were made and filed, and an order and decree, together with an injunction, entered. The findings of fact recited: That the petitioners appeared in open court by Messrs. Bartlett, Thatcher & Gibbons, their attorneys, "and said Nye and Ormsby County Bank appearing in open court by A. M. Nye, its attorney, and said bank being further present in court by James J. McQuillan, its vice-president, and C. H. Phillips, its secretary." "Findings of Fact. Said court finds each and all the allegations and averments set forth and contained in said petition to be true. The court further finds that none of the directors of the said the Nye and Ormsby County Bank, a corporation, have requested or asked that they or either of them be appointed receivers of said the Nye and Ormsby County Bank, a corporation." By the order and decree entered in pursuance of the findings of fact and conclusions of law, said respondents, J. J. Mullin and Gilbert C. Ross were appointed receivers of the property and effects of said bank "wherever the same may be situate," and further ordered "to proceed diligently to wind up the affairs of said corporation, and to distribute its assets, subject, however, to the control and further order of this court."

It was further ordered that the temporary injunction be made permanent. The order and decree also fixed the bond of the receivers at $5,000, subject to be increased by the court at any time. Upon the 15th day of March, 1909, in pursuance of an affidavit made and filed by said receivers, an order was made by said respondent judge, reciting that it appearing from said affidavit of said receivers that Frank Golden, petitioner herein, had failed and refused to comply with the said decree and order of court made on the 24th day of February, 1909, after demand made upon him therefor, and ordering that said Golden appear and show cause why he should not be punished for contempt in refusing to obey the orders of said court in the premises. Upon the 22d day of March, 1909, the said Frank Golden, petitioner herein, filed a motion to vacate and set aside the order and decree appointing the receivers and the order citing him for contempt, and also an answer to the citation for contempt, both of which attacked the jurisdiction of the court to make the decree and order of February 24, 1909.

The motion to vacate and set aside was based upon the grounds: That the said Golden never signed or authorized his signature to the petition asking for the appointment of a receiver, nor that he consented to the same, but that said petition was made, signed, and filed without his consent, knowledge, authorization, or approval; that the said bank was at the time of making the decree and order subject to the banking laws of the state, and subject to the control and supervision of the board of bank commissioners, and was then being investigated by the state bank examiner; that on the 18th day of March, 1909, in pursuance of an order of the state board of bank examiners, the attorney-general had instituted a suit in the name of the state upon the relation of the attorney-general and the members of the board of bank commissioners as plaintiffs, against the said Nye and Ormsby County Bank, and the directors thereof, seven in all, as defendants, which suit prays for the appointment of a receiver; that said decree and order was in violation of that certain act entitled "An act creating a board of bank commissioners, defining their duties, providing for the appointment of a bank exam-

iner, prescribing his duties, * * * and other matters relating thereto," approved March 26, 1907 (Stats. 1907, p. 229, c. 119); that the court had no jurisdiction of the subject-matter of said proceeding and had and has no jurisdiction of the parties thereto; that no service of any notice of the filing or the hearing of said petition of February 24th, or the order to show cause bearing the same date, was made upon all of the directors and stockholders of said bank; and that some thereof never had any notice or knowledge of the filing or hearing of said petition or of said order to show cause, and no opportunity to appear and claim their preferential rights to be appointed as receivers in said matter. Attached to the said notice of motion was the affidavit of Neal McLean that he was at all times mentioned a stockholder and director of said bank, that he had no notice or knowledge of the said proceedings nor opportunity to make any showing or to claim his preferential rights to be appointed a receiver. Also, was attached the affidavit of said Golden that his name had been signed to the petition without his knowledge, consent, authorization, or approval.

The hearing in the contempt proceedings against petitioner was begun on the 23d day of March, 1909. Prior to the beginning of such hearing, counsel for Golden requested the court to take up in advance the motion to set aside the decree and order appointing the receivers. This request was denied. Whereupon counsel for petitioner herein interposed an oral motion to vacate and set aside all the orders and proceedings, including the order citing petitioner for contempt, upon the ground that the whole proceedings were void for want of jurisdiction for substantially the same reasons embodied in the written motion to set aside the original order and decree. This motion was denied, and the contempt matter was being proceeded with until stopped by the alternative writ of prohibition.

The proceedings in the lower court for the appointment of receivers and for the dissolution of the Nye and Ormsby County Bank were instituted in pursuance of the provisions of section 94 of "An act providing a general corporation law" (Stats, 1903, p. 155, c. 88), which section reads: "Whenever

a corporation has in ten successive years failed to pay dividends amounting in all to five per cent of its entire outstanding capital, or has wilfully violated its charter, or its trustees or directors have been guilty of fraud or collusion or gross mismanagement in the conduct or control of its affairs, or its assets are in danger of waste through attachment, litigation or otherwise, or said corporation has abandoned its business and has not proceeded diligently to wind up its affairs, or to distribute its assets in a reasonable time, or has become insolvent and is not about to resume its business with safety to the public, any holder or holders of one-tenth of the capital stock may apply to the district court, held in the district where the corporation has its principal place of business, for an order dissolving the corporation and appointing a receiver to wind up its affairs, and may by injunction restrain the corporation from exercising any of its powers or doing any business whatsoever, except by and through a receiver appointed by the court. Such court may, if good cause exist therefor, appoint one or more receivers for such purpose, but in all cases directors or trustees who have been guilty of no negligence nor active breach of duty shall have the right to be preferred in making such appointment, and such court may at any time for sufficient cause make a decree dissolving such corporation and terminating its existence."

Considering the foregoing section in the recent case of *Hettel* v. *First District Court*, 30 Nev. 382, we said: "The foregoing section provides for a number of situations, the existence of any of which would authorize the court to make an order appointing a receiver and dissolving the corporation. The corporation in the present instance is sought to be dissolved, and a receiver appointed, upon the ground that 'its assets are in danger of waste through attachment and litigation.' Manifestly the corporation, its officers and stockholders, are interested in any such proceeding. The statute makes no provision for the procedure to be followed to obtain such order. For the holder or holders of one-tenth or any other interest of the capital stock of a corporation to be able to secure an order of dissolution, and as a result of such order place the corporation in the hands of a receiver upon the

mere application for such order without notice or hearing, could not, we think, be sustained, even though an attempt to confer such authority upon a court by statute were made. (10 Cyc. 1309; *Wright* v. *Cradlebaugh*, 3 Nev. 349; *People* v. *Seneca Lake Co.*, 52 Hun, 174, 5 N. Y. Supp. 136; *Crowder* v. *Moone*, 52 Ala. 220.) But the section of the statute in question does not confer such authority upon a court. It simply provides that a holder or holders of one-tenth of the capital stock may apply to the district court for such an order. The statute must be construed, if possible, to give it force and effect. It cannot have effect unless such an order can be made only upon a showing after all parties interested have had an opportunity to be heard. In the present case, for example, large property interests are involved. The stockholders not joining in the petition may be able to show, if given an opportunity, that no real cause exists for a dissolution and the appointment of a receiver, and that the making of such an order might result in serious damage to stockholders opposing the order. Besides, the statute provides that 'in all cases directors or trustees, who have been guilty of no negligence nor active breach of duty, shall have the right to be preferred in making such appointment of receiver.' This would seem to make the directors or trustees at least proper parties to the proceedings in order that they may set forth their claims for the receivership if they desire so to do.''

The order dissolving the corporation and appointing a receiver in the Hettel case was held to be void because made upon the petition without any service or notice whatever. In principle, however, the case is somewhat analagous to the case at bar. In the case now under consideration the order and decree were made upon a notice commanding an appearance forthwith and directed only to the corporation as such. It has been held that a summons returnable forthwith is a nullity and confers no jurisdiction by virtue of its service. (*Hunsaker* v. *Coffin*, 2 Or. 107; *Joiner* v. *Delta Bank*, 71 Miss. 382, 14 South. 464; 20 Ency. Pl. & Pr. 1165.) It certainly could not be regarded due notice in a proceeding of this kind. In this case, however, appearance of the corporation was entered by an attorney prior to the order and decree, and no question has

been raised touching this appearance. A proper appearance will, of course, clothe the court with jurisdiction over a party to an action, independent of the issuance of process. Upon the hearing in this cause, practically the same questions have been urged as were presented in the court below. The contention that the corporation, being a banking institution, is not subject to be dissolved in accordance with the provisions of said section 94, but is subject only to the provisions of the act of 1907, providing for the appointment of a board of bank commissioners (Stats. 1907, p. 229, *et seq.*, c. 119), and under which last-mentioned act proceedings are pending, presents a very serious question. It is a question, however, which would require determination of necessity only in the event the other positions taken were without merit.

For the purposes of this case, we will concede, without so deciding, that a banking corporation may be dissolved and have receivers appointed to wind up its affairs under the provisions of said section 94 of the general corporation law. We deem it also unnecessary to determine the question presented whether or not it was competent for Golden in the contempt proceeding to attack the sufficiency of the petition upon which the order appointing receivers and decree of injunction was based, or whether we can in this proceeding determine whether or not Golden's name was authorized to be signed to the petition.

A more serious objection exists, we think, to the validity of the order and decree appointing the receiver than that of the sufficiency of the petition, to wit, the necessary parties were not before the court, and no sufficient notice or process was issued that would vest the court with jurisdiction to make the order and decree in question. In the Hettel case, *supra*, in referring to said section 94, we said: "The statute makes no provision for the procedure to be followed to obtain such an order. * * * It simply provides that a holder or holders of one-tenth of the capital stock may apply to the district court for such an order. The statute must be construed, if possible, to give it force and effect. It cannot have effect unless such an order can be made only upon a showing after all parties interested have had an opportunity to be heard.

* * * The stockholders not joining in the petition may be able to show, if given an opportunity, that no real cause exists for a dissolution and the appointment of a receiver, and that the making of such an order might result in serious damage to stockholders opposing the order. Besides, the statute provides that 'in all cases, directors or trustees, who have been guilty of no negligence nor active breach of duty, shall have the right to be preferred in making such appointment of receiver.' This would seem to make the directors or trustees at least proper parties to the proceedings in order that they may set forth their claims for the receivership if they desire so to do. * * * The court not having jurisdiction over the person of the corporation and over the natural persons interested in the subject-matter of the orders at the time when they were made, * * * each of them is void. * * *"

In the Hettel case it was unnecessary to determine what parties should be joined in a proceeding of this kind, or what notice should be given. The tenor of that opinion is to the effect, however, that there are other necessary parties than the corporation itself. Usually statutes providing for a dissolution of a corporation provide specifically for the manner of giving notice and the parties to be served. Both personal service and published notice is usually required, and ample time prescribed for all parties to come in and be heard if they desire so to do. The courts have uniformly held that the provisions of such statutes must be strictly complied with, or the court is without jurisdiction to proceed. The statute of this state is silent as to service and parties, but the fact that it permits a tenth part in interest of the stockholders to institute such a proceeding is of itself indicative that the legislature never contemplated that the other nine-tenths interest should not have an opportunity at least to be heard in the proceeding. Process, except in particular cases, requiring an appearance forthwith, is ordinarily void, and it ought especially to be so held in a proceeding of this kind. In the absence of any provision in the statute regulating the notice to be given, less ought not to be required than is provided for in the civil practice act. Regardless of what ought to be the rule, it is manifest that the notice upon which the order and

decree was entered was no better than no notice at all. The notice issued, requiring the banking corporation to appear forthwith, carried with it a temporary injunction, and, by the subsequent order and decree made upon the same day, this temporary injunction was made permanent.

By section 117 of the civil practice act (Comp. Laws, 3212) it is provided: "An injunction or restraining order to suspend the general and ordinary business of a corporation shall not be granted without due notice of the application therefor, to be served in the manner prescribed for service of the summons in the action."

In the recent case of *Forsyth* v. *Chambers*, 30 Nev. 337, we held that a judgment by default entered by a justice of the peace prior to the time allowed by law for the defendant to answer was beyond the jurisdiction of the court and void. (*Bowen* v. *Harper*, 6 Idaho, 654, 59 Pac. 179.) Considering the question of procedure in cases of dissolution of a corporation at suit of shareholders, 10 Cyc. 1309, says: "Where the statute provides for an order to show cause against the application, and for service or publication in a certain way, unless the order is so made and served or published, the whole proceeding will be void. The reason is that the order to show cause is in the nature of original process, bringing in parties in interest, who have the right to oppose the winding up; and of course such a proceeding will be dismissed, at the instance of any party in interest at any stage of it, upon it being made to appear that no order to show cause has been made, served, or published, in conformity with the statute."

In *Galpin* v. *Page*, 18 Wall. 350, 371, 21 L. Ed. 959, the court said: "A court of general jurisdiction may have special and summary powers, wholly derived from statutes, not exercised according to the course of the common law, and which do not belong to it as a court of general jurisdiction. In such cases its decisions must be regarded and treated like those of courts of limited and special jurisdiction. The jurisdiction in such cases, both as to the subject-matter of the judgment, and as to the persons to be affected by it, must appear by the record; and everything will be presumed to be without the jurisdiction which does not distinctly appear to be within it. * * *

But where the special powers conferred are exercised in a special manner, not according to the course of the common law, or where the general powers of the court are exercised over a class not within its ordinary jurisdiction upon the performance of prescribed conditions, no such presumption of jurisdiction will attend the judgment of the court. The facts essential to the exercise of the special jurisdiction must appear in such cases upon the record. The extent of the special jurisdiction and the conditions of its exercise over subjects or persons necessarily depend upon the terms in which the jurisdiction is granted, and not upon the rank of the court upon which it is conferred. Such jurisdiction is not therefore the less to be strictly pursued because the same court may possess over the other subjects or other persons a more extended and general jurisdiction."

In *Re Pensacola Lumber Co.*, 8 Ben. 171, Fed. Cas. No. 10,959, Blatchford, J., said: "On the authority of the case of *Galpin* v. *Page*, 18 Wall. 350, 21 L. Ed. 959, I must hold that the corporation had not been dissolved at the time it presented its petition in bankruptcy to this court. The provisions of the Revised Statutes of New York (2 Rev. St. 1st ed. p. 466), in regard to the voluntary dissolution of corporations, confer upon the court of chancery, now the supreme court, special powers, to be exercised in a special manner, and over a subject not within the ordinary jurisdiction of the court. These powers are to be exercised on the performance of prescribed conditions. In such a case no presumption of jurisdiction attends the judgment of the court, but the facts essential to the exercise of the special jurisdiction must appear upon the record of the court."

In *Matter of Pyrolusite Co.*, 29 Hun, 429, the court said: "The rule in all statutory proceedings is that they must conform to the requirements made by the statute providing for them, and, if they fail to do that, then the court does not acquire jurisdiction over the proceedings, and it will have no authority to make any adjudication affecting the rights of the parties designed to be controlled by it. (*Sharp* v. *Speir*, 4 Hill, 76; *Matter of Valentine*, 72 N. Y. 184.)"

In the Hettel case we said that the directors were at least

proper parties.   Even a proper party ought to have an opportunity, in a proceeding of this kind, to be heard, even though service upon him be not necessary.   We think, however, that the directors are necessary parties.   They of necessity have a financial interest in the corporation, and are the ones who are intrusted with its management by the stockholders.   The right to control the affairs of a corporation in which they have a pecuniary interest is of itself an important privilege and usually a valuable right to the one exercising it.   An order dissolving a corporation and placing its affairs in the hands of a receiver, not only effects a radical change in the legal status, but ousts the control of its affairs by the board of directors as such.   Under the allegations of the petition filed in the court below, it was admitted that the directors had a preferred right to be appointed as receivers.   It would seem to be the purpose of the statute to have the affairs of the corporation wound up by the same persons who had constituted its board of directors, and who were familiar with its affairs, and who were intrusted therewith by the stockholders, provided they were guilty of no negligence or breach of duty. The court certainly would have no authority to find they were so guilty, without having jurisdiction of their persons.  .

Thompson on Corporations, vol. 5, sec. 6700, says: "A proceeding for the dissolution of a corporation and a decree or judgment of dissolution, rendered without notice to the parties entitled to oppose the rendition of such judgment or decree, would be merely void, not only under the principles of the common law, but under American Constitutions, federal and state.   It would be contrary to that clause incorporated in most of our State Constitutions, which provides that no man shall be deprived of his freehold liberties, or privileges, without due process of law; the franchise of a corporation being 'liberties' within the meaning of the word as there used.   A statute allowing such a proceeding to take place without notice would also be contrary to that clause of the fourteenth amendment to the Constitution of the United States which prohibits the states from depriving any person of his property without due process of law."

In *McKleroy* v. *Gadsden L. & I. Co.*, 126 Ala. 184, 28 South.

660, the court said: "We are of the opinion that the action of the chancellor in calling a halt in the proceedings to wind up the affairs of the corporation, in the absence of the persons adversely interested therein, was eminently proper. * * * The corporation holds the legal title to the property and, through its directors, has the absolute right of disposition and management in bona fide proceedings for the purpose for which the corporation was formed. * * *"

In the case of *People* v. *O'Brien*, 111 N. Y. 1, 18 N. E. 692, 2 L. R. A. 255, 7 Am. St. Rep. 684, the court of appeals said: "But an objection to this act even more serious than those considered is found in the provision for the appointment of a receiver of the property of the dissolved corporation, and the transfer of its assets to him by force of the statute, after the title thereto had become vested in its directors. It will not be claimed that the appointment of such a receiver by the court, in an action against a stranger, without notice to the trustees, in the absence of the authority conferred by chapter 310, Laws 1886, would confer upon him title to property previously vested in others. (*Parker* v. *Browning*, 8 Paige, 388.) We cannot see how this case differs from the one supposed. The only authority the court had for making the appointment was derived wholly from the provisions of this act; and the court was not thereby invested with any judicial authority or discretion, except that of designating the holder of the title assumed to be transferred by the act. The court has, by virtue of its general jurisdiction over trusts, authority to appoint to a vacant trusteeship, and, perhaps, for cause, to remove fraudulent, dishonest, or incompetent trustees and appoint others to perform the duties of the trust, in order to avoid a failure thereof; but we know of no authority for a court to appoint a receiver of property, vested in trustees without cause and without notice to them, or opportunity afforded to defend their title and possession. As was said by Judge Earl in *Stuart* v. *Palmer*, 74 N. Y. 184, 30 Am. Rep. 289: 'Due process of law requires an orderly proceeding, adapted to the nature of the case, in which the citizen has an opportunity to be heard, and to defend, enforce, and protect his rights. A hearing and an opportunity to be

heard is absolutely essential. We cannot conceive of due process of law without this.' And the chancellor had previously said, in *Verplanck* v. *Mercantile Insurance Company*, 2 Paige, 450: 'Another fatal objection to the regularity of these proceedings is that the appellants were deprived of the possession of their property without having an opportunity of being heard, and without any sufficient cause for such a summary proceeding. By the settled practice of the court in ordinary suits, a receiver cannot be appointed *ex parte* before the defendant has had an opportunity to be heard in relation to his rights.' (*Devoe* v. *Ithaca & O. R. Co.*, 5 Paige, 521; *Ferguson* v. *Crawfors*, 70 N. Y. 256, 26 Am. Rep. 589.) As we have seen, the property of this corporation vested in the persons who were its directors at the time of its dissolution. They took it as trustees for stockholders and creditors, and were not made parties to the action in which the receiver was appointed. No legislation can authorize the appointment of a receiver of the property of A in an action against C without violating the provisions of the Constitution in relation to the taking of property without due process of law. That the legislature might amend the provisions of the Revised Statutes in relation to the devolution of property of dissolved corporations is indisputable, and, if it had done so in the act of dissolution, it would undoubtedly have prevented the vesting of the property in the trustees; but this it did not do, and it had no right, by mere force of legislative enactment, to take vested property from one individual or trustee and give it to another. (*McLaren* v. *Pennington*, 1 Paige, 102; *Dartmouth College* v. *Woodward*, 4 Wheat. 518, 4 L. Ed. 629.)"

It has also earnestly been contended that the stockholders of a corporation are, also, necessary parties, but there is some divergence of opinion in the authorities, and we deem it unnecessary at this time to determine the question. They are certainly proper parties at least, and the notice given of the hearing ought not to be such as to cut off any possibility of their being heard, if they desire so to be. There never having been a valid order to show cause issued, and all the necessary parties not having been joined in the proceeding or appearing, the court was without jurisdiction to make the said

order and decree of February 24, 1909, and the same was void. All orders subsequently made and based upon said order and decree are likewise void.

It has been contended that the writ of prohibition was not an appropriate remedy in this case, but we think a proper case is presented to authorize its issuance. (*Bell* v. *District Court*, 28 Nev. 280; *Harrison* v. *Hebbard, Superior Judge*, 101 Cal. 152, 35 Pac. 555.) In the latter case the court said: "Under these principles it follows that the order of injunction issued by the court at the commencement of the proceedings for the dissolution of the corporation was without authority, and that the petitioner was not guilty of any contempt in disregarding the same. The subsequent order of the court requiring him to show cause why he should not be punished for violating this order is equally without authority, and it follows that his petition for a writ of prohibition must be granted, and it is so ordered."

It is quite manifest from the record in this case that the proceedings were instituted in the lower court in the best of faith and in the confident expectation that all parties interested in the bank would approve of the course pursued, and this doubtless accounts for the haste in the proceeding. However, the proceedings met with almost immediate challenge, and differences arose, which, had the necessary parties been joined and due notice been given, doubtless either would have been adjusted or the proceeding dismissed. It appears from the record filed herein that the proceedings were instituted as a result of a conference held the day previous in which all the persons participated, who actually were present in court, upon either side, at the time the order and decree were entered. Counsel who appeared for the corporation filed an affidavit during the course of the proceedings in which he set forth the fact that he was an employee in the office of the firm of attorneys who appeared for the petitioners, and that he was authorized to appear for the corporation by the secretary thereof, Mr. C. H. Phillips. This state of facts presents a situation which makes it doubtful whether any adverse parties were before the court at all. In spite, however, of the manifest good faith of all the participants in the proceedings, such pro-

ceedings were, nevertheless, for the reason stated, void. The bank represents a large capital, its assets are alleged to exceed a million dollars, and it is conceded in the action to be perfectly solvent. These facts only emphasize the importance of due regularity in proceedings of this character.

It is ordered that a peremptory writ of prohibition issue restraining the respondents and the lower court from further proceedings under the said order and decree of February 24, 1909, and all orders subsequent thereto and based thereon.

TALBOT, J. (concurring):

I concur in the foregoing order for the issuance of the writ of prohibition.

Following the bare provisions of section 94 of the general corporation law (Stats. 1903, p. 155, c. 88), the court proceeded on the petition apparently signed by the holders of ten per cent of the capital stock of the bank, without other parties, to appoint permanent receivers to take over all its property and wind up its affairs. That section in the statute contains no provision for making the corporation or directors or stockholders parties.

In view of section 89 of the same act, which provides that the board of directors or trustees, at a meeting of which all directors shall have had three days' notice, may pass a resolution that they deem it most for the benefit of the corporation that it be dissolved, and that thereupon notice shall be mailed to all the stockholders and published for four weeks, after which two-thirds of the stockholders may have the corporation dissolved, and which section further provides that nine-tenths of the stockholders may dissolve a corporation without notice, it is not probable that the legislature intended by section 94 that a corporation could be dissolved upon the mere *ex parte* application of persons holding one-tenth of the stock, but rather that the proceedings could be initiated by this small percentage of the stockholders, and that, after the other necessary parties have been joined and heard, the court could determine whether good reason existed for the appointment of receivers to close the affairs of the corporation. Notwithstanding that section 94 does not provide for making the

company or the directors parties nor for notice to them, it is apparent that the *ex parte* order obtained on the mere application of one-tenth of the stockholders for taking over and closing the business of the corporation through receivers was void, because no one representing the other nine-tenths or the remainder of the stock was made a party or had an opportunity to be heard in court, under the constitutional guaranty that no one shall be deprived of property without due process of law.

The citation issued by the court commanding the corporation to appear and show cause forthwith why a receiver should not be appointed was served upon the secretary, who directed an attorney to represent the bank. Whether this notice was defective or not would be immaterial, if the bank made an appearance which would amount to a waiver of notice. It does not appear that the secretary was authorized by the board of directors, or had any authority by reason of the position he held, to empower an attorney to consent to an order so important as the one which was made. Attorneys are presumed to be employed by litigants for whom they appear and to have authority to represent them in all ordinary legal proceedings; but it has been held that they are not presumed to have the power to confess judgment, unless authority for this purpose is specially shown.

As the statute gave the directors preference in the appointment of receivers, and they were in control of the corporation, I think they, at least before they could be divested of their powers, were necessary parties to the proceedings, before the court could properly make an order appointing permanent receivers and requiring that the directors and officers of the company turn over all the property to the receivers, and directing them to wind up the affairs of the corporation.

The court found that all the allegations of the petition were true, including the one that the directors were not guilty of negligence or active breach of duty, and under this finding and the statute it became necessary to appoint one or more of the directors as receivers. Nevertheless the court appointed other persons contrary to the terms of the statute.

The petition having been based on the allegation that the

Talbot, J., concurring

bank was solvent, but, owing to prevailing financial strin-
gency, it was unable to procure the actual money with which
to pay its obligations in full, and that by danger of waste
through attachment and litigation the assets were liable to be
sacrificed and loss occasioned, being different than the grounds
specified in the banking act, which permits receivers to be
appointed in suits brought by the attorney-general under the
order of the state bank commission when the bank is in an
insolvent or unsafe condition, I see no force in the contention
that the latter act, being special, would supersede and prevent
the appointment of receivers under the general one relating to
corporations.

As to the other questions presented, I do not wish to be
understood as expressing any opinion.

SWEENEY, J., did not participate in the foregoing decision.